J-S38014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARLOS THOMPSON | : | |
| | : | |
| Appellant | : | No. 2691 EDA 2022 |

Appeal from the PCRA Order Entered October 6, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001420-2012

BEFORE: LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED NOVEMBER 7, 2023**

Carlos Thompson appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After review, we affirm on the opinion authored by the Honorable Donna Woelpper.

We adopt the factual summary provided by the PCRA court and provide a truncated summary here. In June 2011, Thompson, with his penis exposed, approached an eleven-year-old girl and grabbed her by the arm. Thompson told the girl, "You're going to do it [to] me, darling." PCRA Court Opinion, 2/7/23, at 1. The girl managed to get away from Thompson and tell her family members, who immediately located Thompson and called police. Police arrived on scene and arrested Thompson. *See id.* at 1-2.

---

[*] Retired Senior Judge assigned to the Superior Court.

Thompson was charged and, on December 16, 2015, a jury convicted him of unlawful contact with a minor,[1] corruption of minors,[2] and indecent exposure.[3] The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report, a mental health evaluation, and an evaluation by the Sexual Offenders Assessment Board (SOAB). On March 15, 2016, the SOAB determined that Thompson met the criteria for a Sexually Violation Predator (SVP).

On May 23, 2016, the trial court conducted a sentencing hearing and sentenced Thompson to an aggregate period of 10 years' probation. Additionally, the trial court agreed with the SOAB's assessment and found Thompson to be an SVP, requiring lifetime registration with the Pennsylvania State Police (PSP). After appealing to this Court, Thompson's SVP designation was vacated and he was ordered to 10 years of reporting to the PSP.[4] **See** **Commonwealth v. Thompson**, 221 A.3d 257 (Pa. Super. 2019) (Table).

On November 3, 2021, Thompson filed a *pro se* PCRA petition, his first. The PCRA court appointed counsel, who filed an amended PCRA petition on March 25, 2022, raising numerous claims of ineffectiveness of both trial and

---

[1] 18 Pa.C.S.A. § 6318(a)(1).

[2] **Id.** at § 6301(a)(1)(i).

[3] **Id.** at § 3127(a).

[4] There is additional procedural history not relevant to this appeal that is aptly summarized in the attached PCRA court opinion. Thus, we do not include it here. **See** PCRA Court Opinion, 2/7/23, at 2-5.

- 2 -

appellate counsel. On October 6, 2022, the PCRA court conducted an evidentiary hearing, after which it concluded that Thompson's prior counsel were not ineffective and dismissed Thompson's PCRA petition.

Thompson filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Thompson now raises the following claims for our review:

> [1.] Whether the PCRA court [erred] in not granting relief on the issue that counsel was ineffective.
>
> > A. Whether appellate counsel was ineffective for failing to appeal the following issues:
> >
> > > [i.] [T]he denial of [Thompson]'s post[-]trial motion that the verdict was against the weight of the evidence[.]
> > >
> > > [ii.] [T]he judge's decision to prohibit [Thompson] from testifying with notes and exhibits[.]
> > >
> > > [iii.] [T]he addition of two uncertified[,] illegally[-]added charges at [Thompson]'s preliminary hearing[.]
>
> [2.] Whether trial counsel was ineffective for failing to file a [Pa.R.Crim.P.] 600 motion[.]
>
> [3.] Whether trial counsel was ineffective for failing to effectively cross[-]examine Commonwealth witnesses[.]

Brief for Appellant, at 8.

> When reviewing the [dismissal] of a PCRA petition, our scope of review is limited by the parameters of the [PCRA]. Our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Moreover, in general[,] we may affirm the decision of the [PCRA] court if there is any basis on the record

- 3 -

to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm.

***Commonwealth v. Heilman***, 867 A.2d 542, 544 (Pa. Super. 2005)

(quotations and citations omitted).

All of Thompson's claims challenge the effectiveness of his prior counsel. Generally, counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[:] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

After consideration of Thompson's arguments on appeal, the certified record, and the relevant law, we conclude these issues have been correctly and comprehensively addressed by Judge Woelpper. We, therefore, rely on her opinion to affirm the order dismissing Thompson's PCRA petition. ***See*** Trial Court Opinion, 2/7/23, at 1-18. The parties are directed to attach a copy of Judge Woelpper's opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/7/2023</u>

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0001420-2012

         V.              :

CARLOS THOMPSON          :     2691 EDA 2022

**FILED**

PCRA OPINION

**FEB 0 7 2023**

WOELPPER, DONNA, J.

Appeals/Post Trial
Office of Judicial Records

Carlos Thompson has appealed the Court's Order dismissing his petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 et seq. The Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925, and for the reasons set forth herein, recommends that its Order be affirmed.

I.     PROCEDURAL & FACTUAL HISTORY

On December 16, 2015, following a jury trial before this Court, Defendant was found guilty of unlawful contact with a minor,[1] corruption of minors,[2] and indecent exposure.[3] A summary of the factual evidence supporting Defendant's convictions is as follows.

On June 27, 2011, the complainant ("M.D."), then 11 years old, walked from her grandmother's house on East Rittenhouse Street in Philadelphia to a doughnut shop around the corner. As M.D. was walking back to her grandmother's house, Defendant approached her with his penis exposed. He grabbed her by the arm and said, "You're gonna do it [to] me, darling." M.D. pulled away from him and ran to her mother, grandmother, and adult cousin. Immediately

---

[1] 18 Pa.C.S. § 6318(a)(1).
[2] 18 Pa.C.S. § 6301(a)(1)(i).
[3] 18 Pa.C.S. § 3127(a).

after hearing what had happened, M.D.'s mother and cousin ran outside to find Defendant. M.D. identified him to her family members, who, along with others in the area, held Defendant until police arrived. Police officers placed Defendant in custody and transported him and M.D. to the Special Victims Unit. Although Defendant initially was released that same day,[4] he subsequently was arrested and charged. (N.T. 12/16/15 at 31-38, 45, 47, 49, 68, 72, 112-113).

The Commonwealth also presented the testimony of S.D. at trial. S.D. testified that on May 24, 2011, she had a similar encounter with Defendant. Her testimony was admitted under Pa.R.E. 404(b) to show a common scheme or plan. S.D. testified that when she was 13, while walking to school alone on Tulpehocken Street in Philadelphia, Defendant walked toward her, talking to himself. After seeing Defendant, S.D. decided to cross the street for safety. Defendant then tried to grab her. S.D. evaded Defendant and ran to school. There, she immediately informed a teacher about the incident. The teacher summoned police, who transported S.D. to the Special Victims Unit. While she was being transported, S.D. saw Defendant walking on the street. Police exited the vehicle and took Defendant into custody. (Id. at 77-84).

After the jury rendered its verdict, the Court deferred sentencing pending the completion of a presentence investigation, mental health evaluation and an evaluation by the Sexual Offenders Assessment Board ("SOAB"). On March 15, 2016, upon conducting an assessment of Defendant, the SOAB determined that Defendant met the criteria for a Sexually Violent Predator ("SVP"). On May 23, 2016, the Court conducted a hearing and determined that the Commonwealth proved by clear and convincing evidence that Defendant met the criteria for an SVP and found him to be an SVP, subjecting him to lifetime registration with the Pennsylvania

---

[4] Defendant was released from custody until a warrant for his arrest could be secured. (N.T. 12/16/15 at 112).

2

State Police. The Court then sentenced Defendant to an aggregate term of ten years' probation and ordered him to comply with lifetime sexual offender registration.

On May 25, 2016, Defendant filed a post-sentence motion, which the Court denied on August 26, 2016. Defendant timely filed a pro se notice of appeal and Rule 1925(b) Statement. On April 5, 2017, the Court issued its Rule 1925(a) Opinion, finding Defendant's pro se claims to be both waived and meritless. Nonetheless, following various miscellaneous motions and remands on appeal, appellate counsel ultimately was appointed. On May 14, 2018, counsel filed a Rule 1925(b) Statement, asserting that the Court erred in admitting other acts evidence pursuant to Pa.R.E. 404(b) and that there was insufficient evidence to deem Defendant an SVP.

On August 10, 2018, the Court filed its Rule 1925(a) Opinion, finding Defendant's evidentiary claim to be meritless, but deeming his SVP designation, resulting in lifetime registration, to be illegal pursuant to Commonwealth v Muniz, 164 A.3d 1189 (Pa. 2017) and Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017) ("Butler I"), appeal granted, 190 A.3d 581 (Pa. 2018). On August 12, 2019, the Superior Court vacated Defendant's judgment of sentence inasmuch as it designated him an SVP, and remanded the matter to this Court to provide Defendant with proper notice of the appropriate registration requirements.

At a hearing on October 1, 2019, Defendant was advised of the applicable ten-year sexual offender registration requirements. Defendant timely filed a notice of appeal to the Superior Court. Defendant thereafter timely filed a Rule 1925(b) Statement, asserting that his sentence under the Pennsylvania Sexual Offender Registration and Notification Act ("SORNA") was unconstitutional on multiple grounds and in violation of Alleyne v. United States, 570 U.S. 99 (2013). On July 1, 2020, the Court filed its Rule 1925(a) Opinion, finding each of Defendant's claims waived.

3

During this time, on March 26, 2020, the Pennsylvania Supreme Court reversed <u>Butler I</u>, holding that SORNA's requirements for SVPs do not constitute criminal punishment and are not subject to the conditions set forth in <u>Alleyne</u>. <u>See</u> <u>Commonwealth v. Butler</u>, 226 A.3d 972 (Pa. 2020) ("<u>Butler II</u>"). Accordingly, defense counsel advised Defendant to voluntarily withdraw his appeal, lest he be resentenced and required to register as an SVP:

> [ADA Andress]
> Q. So, in essence, by discontinuing the appeal [Defendant] could realize a windfall due to these changes in the law?
>
> [Appellate Counsel Barrish]
> A. Yes, I explained to him that if this appeal went forward that either your office, the DA's office, would argue that it should be remanded so that he could be resentenced and again be a sexually violent predator sex offender and have to report for life, or the Superior Court -- or I'm sorry. The Superior Court <u>sua spont[e]</u> would remand it for that very reason since a higher Appellate Court, the Supreme Court of Pennsylvania, has already overruled them, and then in <u>Butler II</u> you can now be a[n] SVP, sexually violent predator, and be required to report for life again. I explained that to him, that the law is completely clear on that issue.
>
> [ADA Andress]
> Q. Now, when you had these conversations with [Defendant], at that time did he appear to understand what you were explaining to him?
> [Appellate Counsel Barrish]
> A.      Yes, he did.
> [ADA Andress]
> Q.      And did he agree with that advice at the time?
> [Apellate Counsel Barrish]
> A.      Yes, he did.

(N.T. 10/06/22, at 18-19).

Consequently, on October 30, 2020, Defendant filed a praecipe to discontinue the appeal, which was certified by the Superior Court on November 2, 2020. On November 3, 2021,

4

Defendant filed a pro se PCRA petition.[5] PCRA counsel was appointed to represent Defendant, and on March 25, 2022, counsel filed an amended petition, raising numerous claims of ineffectiveness of trial and appellate counsel. Upon review, this Court found Defendant's claims to be lacking in merit, but in an abundance of caution granted Defendant an evidentiary hearing limited to the issue surrounding the discontinuance of Defendant's direct appeal. Following an evidentiary hearing on October 6, 2022, and for the reasons highlighted above, the Court found that counsel was not ineffective for advising Defendant to discontinue the appeal. On the same date, and in Defendant's presence, the Court formally dismissed his petition.

On October 9, 2022, Defendant filed a notice of appeal. On October 14, 2022, the Court ordered Defendant to file a Concise Statement of Matters Complained of on Appeal in accord with Pa.R.A.P. 1925(b). On November 1, 2022, counsel for Defendant timely complied.

## II. ISSUES ON APPEAL

Defendant raises the following issues in his Rule 1925(b) Statement:

> [1]. Appellate counsel was ineffective for failing to appeal the denial of [Defendant's] post-trial motion that the verdict was against the weight of the evidence. (See amended PCRA Petition 3/25/22, p. 21-23)

> [2]. Appellate counsel was ineffective for failing to appeal the judge's decision to prohibit [Defendant] from testifying with notes and exhibits. (2774 EDA 2016). (See amended PCRA Petition 3/25/22, p. 23-24)

> [3]. Appellate counsel was ineffective for failing to appeal the addition of two uncertified[,] illegally added charges at [Defendant's] preliminary hearing. (2774 EDA 2016). (See amended PCRA Petition 3/25/22, p. 24-26)

> [4]. Trial counsel was ineffective for failing to file a Rule 600 motion. (See amended PCRA Petition 3/25/22, p. 27-31)

---

[5] The Commonwealth acknowledges that Defendant's PCRA petition was postmarked well prior to November 3, 2021, and thus was timely filed.

[5]. Trial counsel was ineffective for failing to effectively cross[-]examine Commonwealth witnesses. (See amended PCRA Petition 3/25/22, p. 31-33)

(Defendant's Rule 1925(b) Statement, ¶¶ [1]-[3]).

III. DISCUSSION

A. PCRA & INEFFECTIVENESS STANDARDS

In order to be entitled to PCRA relief, a *petitioner bears the burden* of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2), which include a violation of the Pennsylvania or United States Constitution or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i) and (ii).

Further, the petitioner must show that the allegation of error has not been previously litigated or waived pursuant to Pa.C.S. § 9543(a)(3). See Commonwealth v. Baumhammers, 92 A.3d 708, 714 (Pa. 2014). "An issue has been previously litigated if 'the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue.'" Commonwealth v. Martin, 5 A.3d 177, 183 (Pa. 2010) (quoting 42 Pa.C.S. § 9544(a)(2)). "A PCRA claim is waived 'if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.'" Commonwealth v. Martin, 5 A.3d at 183 (quoting 42 Pa.C.S. § 9544(b)).

Counsel is presumed to have acted effectively, and defendant bears the burden of proving otherwise. Commonwealth v. Rivers, 786 A.2d 923, 927 (Pa. 2000). In order to overcome this presumption, a defendant must demonstrate that: (1) the underlying claim is of arguable merit;

6

(2) counsel had no reasonable basis for his course of conduct; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. Commonwealth v. Porter, 728 A.2d 890, 896 (Pa. 1999) (citing Commonwealth v. Travaglia, 661 A.2d 352, 356-357 (Pa. 1995)). "The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone, and which forms the basis of the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." Commonwealth v. Pierce, 645 A.2d 189, 194 (Pa. 1994) (citations omitted). See also Commonwealth v. Baldwin, 760 A.2d 883, 885 (Pa. Super. 2000) (where the underlying claim is meritless, the inquiry into counsel's actions need go no further, "for counsel cannot be ineffective for failing to assert a meritless claim"). To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. See Commonwealth v. Laird, 119 A.3d 972, 978 (Pa. 2015). Where a defendant has not demonstrated actual prejudice, "the claim may be dismissed on that basis alone and this Court need not determine whether the first and second prongs have been met." Commonwealth v. Fletcher, 750 A.2d 261, 274 (Pa. 2000); see also Commonwealth v. Walker, 36 A.3d 1, 7 (Pa. 2011) ("Failure to establish any prong of the test will defeat an ineffectiveness claim.").

Additionally, "a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to relief, and no purpose would be served by any further proceedings. Commonwealth v. Bickerstaff, 204 A.3d 988, 992 (Pa. Super. 2019) (citation omitted).

7

## B.    DEFENDANT'S CLAIMS ON APPEAL

1.    Ineffectiveness of Appellate Counsel for Not Challenging the Weight of the Evidence on Appeal

Defendant first claims that appellate counsel was ineffective for not appealing the denial of his post-sentence motion challenging the weight of the evidence. This claim is without merit.

Relief on a weight of the evidence claim is reserved for truly "extraordinary circumstances." Commonwealth. v. Sanchez, 36 A.3d 24, 39 (Pa. 2011) (citation omitted).

> Given the primary role of the jury in determining questions of credibility and evidentiary weight, [the] settled but extraordinary power vested in trial judges to upset a jury verdict on grounds of evidentiary weight is very narrowly circumscribed. A new trial is warranted on weight of the evidence grounds only "in truly extraordinary circumstances, i.e., when the jury's verdict is 'so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'"

Criswell v. King, 834 A.2d 505, 512 (Pa. 2003) (emphasis in original) (citations omitted). Thus, "the initial determination regarding the weight of the evidence was for the factfinder", the jury in this case, which "was free to believe all, some or none of the evidence". Commonwealth v. Habay, 934 A.2d 732, 737 (Pa. Super. 2007) (citation omitted); see also Commonwealth v. Manchas, 633 A.2d 618, 623 (Pa. Super. 1993) (it is the exclusive role of the jury to evaluate the credibility of the witnesses and to resolve any conflicts in the testimony). "Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive

8

that as a matter of law no probability of fact may be drawn from the combined circumstances." Commonwealth v. Patterson, 940 A.2d 493, 500 (Pa. Super. 2007).

A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that the evidence was sufficient to sustain the verdict. Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (citation omitted). In reviewing a weight claim, trial judges must not simply "reassess" the credibility of the witnesses, as they "do not sit as the thirteenth juror." Id. at 752 (citation omitted). "Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" Id.

Stated another way, "[a] verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." Commonwealth v. Cruz, 919 A.2d 279, 282 (Pa. Super. 2007) (citations and quotations omitted).

Here, even though this Court twice determined that the jury's verdict was supported by the weight of the evidence, Defendant contends that appellate counsel should have pursued this claim on appeal. However, Defendant's underlying weight claim was, and remains, devoid of merit. Indeed, the only inconsistency in the witnesses' testimony was that M.D. described Defendant as wearing a grey shirt and black pants, while one of the responding officers testified the Defendant was dressed in all black clothing. Such a minor discrepancy in clothing description did not warrant overturning the jury's verdict. Stated differently, this minor discrepancy hardly shocks one's sense of justice, let alone caused this jurist to lose her breath and almost fall from the bench. See Commonwealth v. Cruz, 919 A.2d at 282.

9

Indeed, given the detailed and consistent testimony of M.D. and S.D., who described strikingly similar encounters with Defendant, which occurred under similar circumstances and only one month apart, it is fair to conclude that this claim had no reasonable likelihood of success on appeal. In that regard, the Superior Court would have had to have ruled that this Court abused its discretion in determining that the jury's verdict was supported by the weight of the evidence. Conversely, it was far more reasonable of counsel, in his professional judgment, to omit a meritless issue in order to focus on the two claims that had a greater likelihood of success -- one of which, in fact, resulted in significant relief on appeal. In sum, considering the standard governing weight of the evidence claims and the record in this case, Defendant's underlying claim is without merit, and accordingly, his ineffectiveness claim fails. See Commonwealth v. Baldwin, 760 A.2d at 885 (where underlying claim is meritless, inquiry into counsel's actions ceases as counsel cannot be ineffective for failing to assert meritless claim).

2.  Ineffectiveness of Appellate Counsel for Not Appealing the Trial Court's Ruling that Prohibited Defendant from Testifying with Notes

Defendant next claims that appellate counsel was ineffective for not appealing the Court's ruling that disallowed Defendant from testifying with notes. More specifically, on direct examination, Defendant attempted to testify by reading from notes and documents which he brought to the witness stand. The Court instructed Defendant that he was not permitted to testify from notes. (See N.T. 12/16/15 at 127-128). Despite the lack of objection (for good reason), Defendant claims that appellate counsel should have appealed the Court's ruling. This claim is devoid of merit.

"The present memory refreshed doctrine allows a witness whose present memory while testifying is inadequate to use an aid to jog their memory as to the past events at issue."

10

<u>Commonwealth v Montgomery</u>, 687 A.2d 1131, 1137 (Pa. Super. 1996). However, "three conditions precedent must be established before a witness may refresh his or her memory while testifying. The proponent must establish that: 1) the witness's present memory is inadequate; 2) the writing or other aid could refresh the witness's memory and 3) the writing or other aid actually refreshes the witness's memory." <u>Id.</u> (citations omitted). To be certain, "it is not proper for the witness to take the stand to testify initially while holding the writing." <u>Id.</u>

Here, Defendant never alleged or even suggested that the papers he brought to the witness stand were for the purpose of refreshing his recollection of the events to which he was testifying. Nonetheless, even if that were their intended purpose, he failed to establish the conditions that would permit him to refer to his papers while testifying. Defendant did not establish that his present memory of the assault and surrounding circumstances was inadequate to testify without an aid to jog his memory. Nor did he establish that referring to the documents would have, in fact, refreshed his recollection. <u>See</u> <u>Commonwealth v Montgomery</u>, 687 A.2d at 1137. Thus, the Court properly instructed Defendant that he was not permitted to use the papers during his testimony. Accordingly, appellate counsel was not ineffective for failing to pursue this claim on appeal.

### 3. <u>Ineffectiveness of Appellate Counsel for Failing to Appeal the Addition of Two "Illegally Added" Charges</u>

Next, Defendant faults appellate counsel for not appealing "the addition of two uncertified[,] illegally added charges at [Defendant's] preliminary hearing." This claim is without merit.

Defendant contends that, following his preliminary hearing, he was arrested and charged with two additional charges that were "not on the original list of charges on the FBI Abstract

11

Criminal History Record." (Defendant's Amended PCRA Petition, p. 25). He posits that since the charges of unlawful contact with a minor and corruption of minors did not appear in his FBI extract, "that is proof that the 2 charges [were] uncertified illegally added charges." (Id.). Defendant's FBI extract, however, is not a charging document; that certain charges do not appear in an FBI extract hardly demonstrates impropriety. Rather, the "Information" is the relevant charging document and Defendant does not allege, let alone demonstrate, that any Information filed in this case was defective or otherwise prejudicial.

Nor does Defendant offer any authority or explanation as to how appellate counsel was ineffective. Instead, Defendant merely asserts that he was "illegally charged." Settings aside the fact that the evidence at trial amply supported the charges, Defendant fails to proffer anything to demonstrate actual prejudice. For this reason alone, his claim fails. See Commonwealth v. Fletcher, 750 A.2d at 274 (where defendant has not demonstrated actual prejudice, claim may be dismissed on that basis alone); see also Commonwealth v. Walker, 36 A.3d at 7 ("Failure to establish any prong of the test will defeat an ineffectiveness claim.").

Further, inasmuch as Defendant is claiming impropriety with regard to his preliminary hearing, he would be due no relief. "[The] purpose of [a] preliminary hearing is not to prove guilt but to avoid defendant's incarceration or trial unless sufficient evidence establishes [a] crime was committed and probability that defendant was involved; '**Once [an] appellant has gone to trial and been found guilty of the crime, any defect in the preliminary hearing is rendered immaterial[.]**'" Commonwealth v. Rivera, 255 A.3d 497, 504 (2021) (emphasis in original) (citation omitted), reargument denied (July 29, 2021), appeal granted, 273 A.3d 510 (Pa. 2022); see also Commonwealth v. Ballard, 460 A.2d 1091, 1092 (Pa. 1983) ("A finding at a preliminary hearing that sufficient evidence exists to require a defendant to stand trial is not

12

subject to review if there has been a subsequent independent judicial judgment that there is sufficient evidence to require the defendant to stand trial."); Commonwealth v. Mignogna, 585 A.2d 1, 4 (Pa. Super. 1990) (deficiency in evidence at preliminary hearing cured where trial judge determines trial evidence is sufficient for submission to jury).

Here, Defendant does not take issue with the charges he faced -- which, again, were amply supported by the evidence -- he merely asserts that two of the charges were at some point missing from his FBI extract. For the numerous reasons set forth above, this claim fails.

### 4. Ineffectiveness of Trial Counsel for Failing to Litigate a Rule 600 Motion

Defendant next contends that trial counsel was ineffective for failing to litigate a Rule 600 motion. This claim is unavailing .

Pennsylvania Rule of Criminal Procedure No. 600 "serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society." Commonwealth v. Tickel, 2 A.3d 1229, 1233 (Pa. Super. 2010) (citations omitted). "In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it." Id. "However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth." Id.

"So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime." Commonwealth v. Tickel, 2 A.3d at 1233 (citations omitted). "In considering these matters, courts must carefully factor into

13

the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well." Id.

"As provided by Rule 600, the trial must commence by the mechanical run date, which is calculated by adding 365 days to the date on which the criminal complaint was filed." Commonwealth v. Tickel, 2 A.3d at 1234 (citations omitted). "The mechanical run date can be adjusted by adding any 'excludable' time when the delay was caused by the defendant under Rule 600(C)." Id. "If the trial begins before the adjusted run date, there is no violation and no need for further analysis." Id. "However, if the defendant's trial is delayed until after the adjusted run date, [courts] inquire if the delay occurred due to … circumstances beyond the Commonwealth's control." Id. If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. See, e.g., Commonwealth v. Browne, 584 A.2d 902 (Pa. 1990); Commonwealth v. Genovese, 425 A.2d 367 (Pa. 1981). In evaluating a trial court's ruling on speedy trial issues, the standard of review is whether the trial court abused its discretion. See Commonwealth v. Peterson, 19 A.3d 1131, 1134 (Pa. Super. 2011) (en banc).

Applying the foregoing, Defendant's claim fails. The Commonwealth filed its Complaint against Defendant on September 11, 2011, which led to a preliminary hearing on February 6, 2012, at which time he was held for court. A continuance was requested on March 8, 2012, although the record does not indicate which party requested it, and the matter was continued until April 10, 2012. Meanwhile, on March 29, 2012, Defendant filed an omnibus pretrial motion, which necessitated additional time before trial could commence. Following Defendant's rejection of the Commonwealth's plea offer, trial was scheduled for November 7, 2012.

14

Unfortunately, Defendant did not appear for trial on November 7, 2012, and his whereabouts were unknown. On the same date, a bench warrant was issued for his arrest, which was lifted when it was discovered that Defendant was in custody at the House of Corrections on an unrelated matter. The case was relisted for trial on October 15, 2013. On March 22, 2012 (i.e., seven months prior to the scheduled trial date) the defense requested a mental health evaluation to determine whether Defendant was competent to stand trial. On April 30, 2013, Defendant was found competent to stand trial.

On August 6, 2013, however, the defense requested another evaluation to assess Defendant's competency to stand trial. The record does not indicate whether the evaluation occurred prior to the next scheduled date. On October 15, 2013, the matter was delayed for two days because the trial court was conducting another jury trial. On October 17, 2013, Defendant asserted his desire to proceed *pro se*. This resulted in another delay and the matter was continued until August 26, 2014.

On August 24, 2014, the defense moved for another continuance for further investigation, which this Court granted. The case was rescheduled for trial on August 3, 2015. On August 3, 2015, Defendant's competence to stand trial was again asserted, garnering another mental health evaluation. Trial was rescheduled for December 14, 2015, on which date it commenced.

The record thus indicates that all continuances dating from November 7, 2012 until December 14, 2015, were attributable to the defense, apart from the two days in October 2015, which were due to court delays, and beyond the Commonwealth's control. As such, there was no basis for trial counsel to litigate a Rule 600 motion, since all the delays were excludable/attributable to the defense, and there has been no showing that the Commonwealth failed to exercise diligence in attempting to bring this case to trial. In sum, given that

15

Defendant's underlying claim lacks merit, counsel cannot be faulted for failing to pursue same. See Commonwealth v. Pierce, 645 A.2d at 194 (counsel cannot be deemed ineffective for failing to assert a meritless claim).

### 5. Ineffectiveness of Trial Counsel for Failing to Properly Cross-Examine the Witnesses

Finally, Defendant faults trial counsel for failing to "effectively" cross-examine the witnesses. This claim is without merit.

Defendant asserts that trial counsel should have cross-examined the minor complainant, M.D., regarding two alleged inconsistent statements. (Defendant's Amended PCRA Petition, at 31-33). As to the first inconsistency, Defendant points to M.D.'s testimony at trial that Defendant grabbed her arm before saying, "You're gonna do it to me, darling" -- whereas in her police statement, she responded "no" when asked if Defendant had "touched her in any way." (Id. at 31). Defendant claims that counsel should have cross-examined M.D. about this inconsistency, however, he does not articulate how or why it would have yielded a different result at trial. Moreover, apart from a child thinking "touched" meant in a sexual way, the fact remains that Defendant was not charged with any offense where physically grabbing the complainant was an element of the crime. Further, there was never any question in this case that it was Defendant who accosted M.D. In sum, Defendant simply cannot demonstrate that cross-examining M.D. on such a relatively insignificant inconsistency would have altered the outcome at trial. As such, this claim fails.

Additionally, Defendant contends that "the testimony of MD and Officer Barnesfield, about the location where [Defendant] was arrested is inconsistent." (Id. at 32). More specifically, he cites M.D.'s testimony that Defendant was arrested at Germantown and Chelten

16

Avenues, whereas Officer Barnesfield testified that Defendant was arrested at Germantown Avenue and Haines Street -- i.e., two blocks away. (Id.). However, the precise location of Defendant's arrest within a span of two blocks was hardly a material factor in this case. Moreover, it is not remotely surprising that an 11-year-old child who had just suffered a harrowing experience might have been imprecise about the location where Defendant was apprehended. Nonetheless, assuming *arguendo* that trial counsel should have inquired into this minor discrepancy, it does not follow that his failure to do so prejudiced Defendant considering the indisputable evidence of his guilt. Accordingly, this claim is unavailing. Commonwealth v. Fletcher, 750 A.2d at 274; Commonwealth v. Walker, 36 A.3d at 7.

IV.    CONCLUSION

For the reasons set forth in the foregoing Opinion, the Court's Order denying PCRA relief should be affirmed.

BY THE COURT:

DATE: 2/7/23

DONNA WOELPPER, J.

17

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL SECTION**

COMMONWEALTH OF : CP-51-CR-0001420-2012
PENNSYLVANIA : 2691 EDA 2022
:
:
:
vs. :
:
:
CARLOS THOMPSON :

## PROOF OF SERVICE

I hereby certify that I am this 7ᵗʰ day of February, 2023, serving the foregoing PCRA Opinion on the persons indicated below:

***By First Class Mail***
Peter A. Levin, Esquire
1927 Hamilton Street
Philadelphia, PA 19130

***By Interoffice Mail***
Lawrence Goode, Assistant District Attorney
Supervisor, Appeals Unit
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Anna Dillon
Secretary to the Honorable
Donna M. Woelpper